Kerr Steamship Company, Inc., Plaintiff, v. Kerr Navigation Corporation, Defendant.

(Supreme Court, New York Special Term, September, 1920.)

Injunctions — when motion for, granted — contracts — ships and shipping — damages.

In pursuance of an agreement for the reorganization of a navigation company for which plaintiff was managing and operating a certain number of steamships, defendant, the new navigation company, agreed to and did appoint plaintiff its exclusive agent to manage and operate the steamships acquired by it by transfer from the old navigation company, and all other vessels which it might acquire during the existence of the agreement which in terms was to continue for five years unless terminated by a written ninety days' notice. Under the terms of the agreement and a notice to terminate it, given on July 24, 1920, plaintiff has the right of management and control of defendant's steamships until October 22, 1920. The defendant on September 4, 1920, notified plaintiff that it was at once assuming the control, operation and management of all ships owned by it, and has taken possession of one of them. In an action to restrain defendant from interfering or attempting to interfere with the possession, management and control by the plaintiff of the ships referred to in the complaint and ordering the defendant to restore the one of which it has taken possession, *held*, that as plaintiff was seeking to be restored to the same condition as if defendant had taken no action on September 4, 1920, it was entitled to no greater relief, and its motion for an injunction as prayed for will be granted until the termination of the agreement in accordance with the notice of July 24, 1920. The defendant restrained during the pendency of the action from taking any further steps under the notice of September 4, 1920, upon condition that plaintiff give security in a sum sufficient to cover the amount of moneys which may now be or hereafter may become payable to the defendant for any damages which may be caused to it if the ships are improperly used by plaintiff.

Action for an injunction.

Noble, Morgan & Scammell (John B. Stanchfield, of counsel), for plaintiff.

McKinstry, Taylor, Patterson & Ellis (George Adams Ellis, of counsel), for defendant.

LEHMAN, J.  Prior to July, 1919, the plaintiff corporation managed and operated for a corporation known as the Kerr Navigation Corporation, but not the defendant herein, eight steamships owned by that corporation.  At that time negotiations were begun to obtain more capital for the Kerr Navigation Corporation and as a result of these negotiations it was arranged that the Kerr Navigation Corporation should transfer its ships, good-will and franchises, including the right to use its corporate name, to the American Ship and Commerce Navigation Corporation, which issued in payment therefor 40,000 shares of its class A stock and 35,000 shares of its class B stock.  Subsequently the original Kerr Navigation Corporation was dissolved and the American Ship and Commerce Navigation Corporation adopted its name and is the defendant herein.  As part of the plan of reorganization the American Ship and Commerce Corporation was organized to hold stock in the defendant corporation and it agreed to subscribe for 76,000 shares of the class B stock of the defendant corporation at the price of $100 per share and further agreed with H. F. Kerr, a stockholder of the original Kerr Navigation Corporation, and with the Kerr Navigation Corporation, for the benefit of such stockholders who might receive any of the 40,000 shares of class A stock or any of the 35,000 shares of class B stock of the defendant, given in payment for the property of the original Kerr Navigation Corporation, to purchase from them this stock upon certain contingencies.  At the same time and still in pursuance of the plan of reorganization, the defend-

ant agreed to appoint and did appoint the plaintiff " as its exclusive agent to manage and operate " the steamships acquired by it by transfer and all other vessels which it might acquire during the existence of the agreement and it authorized and empowered the plaintiff " to perform all the duties and to exercise all the powers which in the maritime world are understood to be within the duties and powers of managing owners with regard to each and every of said vessels " and further agreed among other things that " the Steamship Company shall have control and direction of the movements, trades, rates, services, routes, voyages, cargoes and all other matters connected with the use of such other vessels."

The plaintiff agreed to accept such appointment and to manage and operate the steamships and to receive as payment " for the performance of the duties and the exercise of the powers hereunder by the Steamship Company as agent for the New Navigation Corporation in managing and operating such steamships, a commission of five per centum net to the Steamship Company on the amount of the gross freight of each vessel on each outward and inward voyage."

It was further provided that " this contract shall continue in effect for five years from the date hereof unless sooner terminated by the New Navigation Corporation and of the holding corporation, which corporation shall have the right to terminate this agreement at any time upon 90 days' notice to the Steamship Company in writing, signed by the New Navigation Corporation and by the Holding Company and upon the performance by the Holding Company of its obligation expressed in the said agreement, a copy of which is hereto annexed, providing for an option for the sale to the Holding Company of stock of the New Navigation Company and the termination hereof shall

not become effective except upon such performance by the Holding Company of such obligation for the purchase of such stock.''

Since the making of this agreement the plaintiff has managed and controlled the steamships owned by the defendant and large profits have resulted from such operation to both parties, but on July 24, 1920, the defendant and the Holding Company gave notice to the plaintiff that they elected to terminate the agreement in ninety days. Thereafter stockholders of the original Kerr Navigation Corporation tendered to the Holding Company 49,000 shares of the corporate stock in the defendant and the Holding Company paid for the said stock the sum of $4,900,000. Under the terms of the contract and the notice the plaintiff still has the right of management and control of the steamships owned by the defendant until October 22, 1920, and even beyond that time if the Holding Company should fail to purchase any further stock that may be tendered to it under the terms of the agreement, but it appears that on September fourth the defendant notified the plaintiff that it was at once assuming the control, operation and management of all ships owned by it and in fact has taken possession of at least one of said ships. The plaintiff now seeks an injunction against the defendant from interfering or attempting to interfere with the possession, management and control by the plaintiff of the ships referred to in the complaint herein and ordering the defendant to restore possession, management and control to the plaintiff of the ship of which it has taken possession.

The defendant claims that it is justified in assuming the control of the ship in spite of its contract, on the ground that the plaintiff is using its agency for its own benefit, has retained moneys belonging to the defendant which it should pay over to the defendant

and is threatening to divert the ships to voyages which will be detrimental to the best interests of the defendant. The charges that the plaintiff has in the past not acted for the best interests of the defendant and is retaining moneys belonging to the defendant are too vague and unspecified to justify a rescission of the contract and the alleged threats by the plaintiff's officers to divert the steamships are denied.

The court cannot, upon this motion, determine conclusively the question of whether the plaintiff has in the past or intends in the future, to exercise the powers conferred upon it with due regard for the best interests of the defendant, and consequently cannot now determine whether the defendant is legally and morally justified in rescinding the contract before the date of its termination in accordance with its provisions, but if the plaintiff would suffer from such rescission, if not justified, irreparable damage, the court should upon proper conditions protecting the defendant, exercise all its equitable powers to maintain the present status until the questions of fact can be determined at the trial. I am fairly convinced that the action taken by the defendant is due to the natural fear that owing to the obvious ill-feeling existing between the parties, the plaintiff will, during the short period during which the contract should by its terms remain in existence, consider primarily its own interests and use the defendant's property for purposes inimical to the interests of the defendant. It would seem, however, that the defendant can be protected by the giving of a bond sufficient to cover its possible damages. Certainly a bond can cover the financial obligation of the plaintiff and I can see no reason why, even if the plaintiff should hereafter act in a manner inimical to the defendant's interests, its damages could not be proven in proceedings to enforce the bond.

Moreover it is very improbable that even if the plaintiff has intended to divert the vessels from their usual course and use them solely for its own purposes, it should continue to do so. Any change in the manner of using these ships during the continuance of this injunction could be shown at the trial, and if improper would prevent the plaintiff from recovering a final judgment and subject the plaintiff to liability on the bond, and any change in the use of the ships during this period would naturally give rise at least to suspicion of its purpose.

The defendant, however, claims that the plaintiff will not suffer any irreparable damage even by a wrongful termination of its right of control and management and that in any event the relation between the parties hereto is merely that of principal and agent and that a court of equity cannot and should not enjoin a principal from revoking the agency. It is, of course, well established that a principal has power to revoke a simple agency even if created by contract for a definite time subject only to his liability to respond in damages for breach of his contract. A court of equity will not compel an employer to continue in his employ a servant or agent distasteful to him or be bound by the acts of an agent whom he no longer desires to have represent him, but the present contract contains features which distinguish it in principle from the ordinary cases of employment or agency. The papers before me do not show definitely what duties and powers are ordinarily exercised by " managing owners " but apparently the plaintiff has, without dissent from the defendant, made all contracts in its own name and through its own agents and the parties have thereby put a practical construction upon the terms of their contract and the plaintiff must be assumed to have been authorized to make the contracts in its own

name as principal.  The plaintiff has thereby assumed personal obligation and has an interest in seeing that these contracts are carried out under its own direction and management.  Moreover, since contracts were to be made in the plaintiff's own name, the plaintiff is only in a limited sense an agent for the defendant. The defendant has absolutely relinquished all right of control and direction of the plaintiff in the operation of the ships and the plaintiff has apparently no right and apparently does not assume to make contracts for the defendant.  In its essence the contract is one whereby the defendant merely gives to the plaintiff the possession and control of the ships and agrees to furnish the plaintiff with the necessary moneys for their operation in consideration of the plaintiff's agreement to account to the defendant for the gross receipts less the disbursements incurred in the operation of the ships.  The injunction asked by the plaintiff would merely require the defendant to return to the plaintiff or leave in its control, the ships owned by the defendant during the term of the contract and would impose upon the defendant no liability for contracts made without its consent and deprive it of no rights which it has not voluntarily relinquished for a good and sufficient consideration.  The contract between the parties hereto was part of one entire proceeding whereby the defendant obtained title to the ships.  By that arrangement the plaintiff was to have the control of the ships till ninety days after notice of election to terminate and till the Holding Company had complied with the terms of its own agreement to purchase certain shares of stock.  It seems to me that it is idle to consider whether technically the arrangement between the parties is one that should be called an agency or not and whether, in view of certain peculiarities in the contract, the plaintiff can be regarded as having an

interest as well as an agency.  The real matter to be considered is whether the plaintiff has rights which should be protected by the court of equity and which the court can protect by virtue of its power of injunction.  The parties by the very terms of the contract evidently contemplated that the management of the ships by the plaintiff could not be revoked except upon ninety days' notice and after payment for any stock tendered and the court cannot look with favor upon a claim of the defendant, that it has power to retake the ships before the period has completely elapsed during which stockholders of the corporation originally owning the ships, could tender their stock and receive payment therefor and since by the contract, as practically construed by the parties, the plaintiff was given power to make contracts in its own name and to employ its own staff and agents for a period continuing ninety days after notice of termination of the agreement, the defendant should not be permitted before such period has elapsed, to take from the possession and control of the plaintiff, the vessels necessary to carry out its personal obligations, even though such obligations might be carried out by the defendant or to disrupt and disorganize the business of the plaintiff carried out through the medium of these ships. See Story Agency (9th ed.), § 466.

The defendant cannot well urge there is no mutuality of remedy for the agreement was merely part of a general arrangement of reorganization whereby the defendant obtained title to the ships now in dispute. An injunction as prayed for by the plaintiff will not cause the defendant to become liable on contracts made by an agent in whom it has lost confidence for it merely requires the defendant to restore and leave the ships within the control and management of the plaintiff which makes the contracts for freight in its own

name. Such an injunction will protect the plaintiff from damages which it might suffer and a sufficient bond will protect the defendant from damages if it should prove that it was justified in demanding the immediate return to its own control of its own ships.

The plaintiff claims that the defendant should be enjoined from interference with the ships not only until October twenty-second, but during the entire contract period, on the ground that by its action in giving the notice of September 4, 1920, and thereafter taking possession of one of the ships, the defendant abandoned the notice it had previously given pursuant to the terms of the contract, terminating the contract at the expiration of ninety days. It seems to me that this contention is without force. The notice of July twenty-fourth set a definite term to the continuance of the contract and was properly given in accordance with the provisions of the contract itself. The subsequent action of the defendant may or may not have been a breach of the contract but it constitutes no abandonment of the contract or of the notice previously given and cannot be held to render such notice void. The plaintiff by the present action is seeking to be restored to the same condition as if the defendant had taken no action on September fourth and is entitled to no greater relief.

The motion is, therefore, granted to the extent that until the termination of the contract in accordance with the notice of July twenty-fourth, the defendant, its officers, directors, agents, attorneys and employees are directed to cease from interfering or attempting to interfere with the possession, management and control by the plaintiff of the ships referred to in the complaint herein, including the steamship *Kerlew*, and to restore possession, management and control of the said steamship *Kerlew* to the plaintiff and restraining, during the pendency of this action, the

defendant, its officers, directors, agents, attorneys and employees and each of them from taking any further steps under the notice directed to the plaintiff and dated September 4, 1920, upon condition however that the plaintiff shall within six days after date of entry of order herein, give security in a sum sufficient to cover the amount of moneys which may now be or hereafter may become payable to the defendant and for any damages which may be caused to the defendant if the ships are improperly used by the plaintiff. The amount of such bond will be determined upon the settlement of the order.

Ordered accordingly.